FILED & ENTERED

DEC 13 2012

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Oganes Indzheyan<br>Greta Mnatsakanyan<br><br>Debtor(s).<br><hr><br>David Fink<br><br>Plaintiff(s),<br><br>v.<br><br>Oganes Indzheyan, Hovick Indzheyan,<br>Greta Mnatsakanyan<br><br>Defendant(s).<br><hr> | Case No.:  1:11-bk-15103-GM<br><br>Adv No:   1:11-ap-01472-GM<br><br>Chapter 7<br><br>**MEMORANDUM OF OPINION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  August 28, 2012<br>Time:  10:00 a.m.<br>Courtroom:  303 |

The complaint in this case is for both denial of discharge under §727 and for non-dischargeability of this debt under §523(a)(2)(A).

1

## Standard for Summary Judgment

Summary judgment is proper when the pleading, discovery, and affidavits show

that there is "no genuine dispute as to any material fact and that the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which

may affect the outcome of the proceedings.  Anderson v. Liberty, Inc., 477 U.S. 242,

248 (1986). The party moving for summary judgment bears the burden of identifying

those portions of the pleadings, discovery, and affidavits that demonstrate the absence

of a genuine issue of a material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986). On an issue for which the opposing party will have the burden of proof at trial,

the moving party need only point out "that there is an absence of evidence to support

the nonmoving party's case." Id. at 325.  The facts must be viewed in the light most

favorable to the party opposing the motion.  Anderson, 477 U.S. at 249; Masson v. New

Yorker Magazine, 501 U.S. 496, 520 (1991).  Mere allegations or denials do not defeat

a moving party's allegations.  See Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d

957, 960 (9th Cir. 1994).

In reviewing this motion, it is appropriate to summarize the arguments and to

incorporate the Court's comments and some of the rulings within those summaries.  For

that reason, the Court's comments are set out in italics.


## Non-Dischargeability: §523(a)(2)

### The motion (Court's comments in italics)

On 7/24/08 David Fink ("Plaintiff"), who is the assignee of certain checks that

were returned NSF, obtained a default judgment for $70,533.43 damages plus

prejudgment interest of $15,142.93 ($85,676.36 total) against Classic Tile & Stone, Inc.

("Classic"), as well as against Oganes Indzheyan and Greta Mnatsakanyan ("Debtors") and also several other individuals who are collectively referred to as "Other Defendants."  The group of Other Defendants included Debtors' son Agop (referred to as Akop in the complaint) and daughter Tagui. (This default judgment was in Orange County Superior Court 07cc12326, is Plaintiff Exhibit 30, and is referred to hereafter as the "OC Judgment.")

The underlying complaint, which is Plaintiff Exhibit 29, had three claims:

1.  The Breach of Contract claim alleges that Classic and certain of the Other Defendants passed two NSF checks (the "2006 Checks"), each dated 12/8/06 in the respective amounts of $5,000.00 and $6,561.45, both drawn on the account of Classic.

2.  The Fraud claim alleges that Debtors and certain of the Other Defendants engaged in a scheme to cheat creditors by writing numerous NSF checks and fraudulently transferring assets out of Hollywood Marble, Inc. ("Hollywood") and into Classic, and that certain Other Defendants passed the NSF 2006 Checks that they did not intend to pay.  Further, there were two other NSF checks (the "2003 Checks"), one dated 2/19/03 and signed by Greta Mnatsakanyan for $20,000 and one dated 8/24/03 and signed by Oganes Indzheyan for $21,444, each drawn on the account of Hollywood and Debtors and one Other Defendant did not intend to pay these checks either.

3.  The Fraudulent Transfer claim alleges that Debtors and certain of the Other Defendants fraudulently transferred assets from Hollywood into Classic to avoid paying debts, including a prior judgment that Plaintiff obtained against Hollywood on 3/10/06 for $55,971.98 in Los Angeles Superior Court Glendale

Judicial District case EC041353, which was on account of the NSF 2003

Checks.  (This is referred to herein as the "LA Judgment.")

The motion argues that the OC Judgment has a preclusive effect in this

proceeding and the Debtors are collaterally estopped from denying fraud.  *Because the*

*Orange County judgment was by default, there are no findings of fact and no indication*

*of the claim(s) on which the OC Judgment is based.*  At the hearing on 8/28/12, Plaintiff

argued that because Debtors are not named in the breach of contract claim, the

judgment against them must arise out of the fraud claims.

There is no dispute that both the 2003 Checks and 2006 Checks were returned

NSF.

The motion attempts to trace the business dealings of the Debtors and their

children in order to show a pattern of giving NSF checks, which would establish the

necessary fraudulent intent and knowledge to support a §523(a)(2) judgment.  This is all

documented in the plaintiff's exhibits.  *The objections to Plaintiff's exhibits are overruled.*

*Some of the objections to Plaintiff's declaration are sustained (generally where Plaintiff*

*moves into commentary or argument), some are overruled.  These rulings are set forth*

*below.  Plaintiff has failed to provide admissible evidence that Classic is a dba of*

*Hollywood.  Classic was incorporated by the Debtors' son and although there are*

*certain similarities as to the checks and at one time they appear to have operated out of*

*the same location, this does not lead to a finding that one was a dba (or perhaps an*

*alter ego) of the other.*

**The opposition (Court's comments in italics)**

The opposition states that there is an issue as to whether Debtors were properly

served with the OC complaint and received due process. *However Plaintiff has introduced a declaration by Mr. Indzheyan testifying that he learned of the lawsuit in late 2009. Plaintiff Exhibit 7. Debtors' daughter Tagui sought to set aside the OC Judgment as against her, but Debtors did not. Opposition at 2.*

The judgment is not subject to res judicata or collateral estoppel since it does not state the necessary findings.

The declarations of Debtors show that Classic is not a dba of Hollywood. The judgments against Hollywood have nothing to do with Classic and many of them have been satisfied. Two of the checks were issued on a Hollywood account and not on a Classic account. The declaration of Oganes Indzheyan dated 8/3/12 ("Indzheyan Declaration") shows that the funds were not improperly withdrawn.

Mr. Indzheyan also testified that there were adequate funds in the bank account to cover the $21,444 check signed by him and returned NSF, but a sheriff's levy was served on the bank account prior to negotiation. Indzheyan Declaration ¶ 7. Ms. Mnatsakanyan testified that there were adequate funds in the bank account to cover the $20,000 check signed by her and returned NSF, but a sheriff's levy was served on the bank account prior to negotiation. Declaration of Greta Mnatsakanyan dated 8/3/12 ("Mnatsakanyan Declaration") ¶ 6. *However, their testimony violates Federal Rule of Evidence 1002, which requires an original writing (in this case the levies themselves or a bank statement showing the levies) to prove its contents. At the hearing, Plaintiff argued that he had conducted a search through the Los Angeles Country Sheriff's website and had been unable to find any levies executed against Classic that would account for the 2003 Checks being NSF. Declaration of David Fink dated 6/27/12 ("Fink Declaration") ¶17; Plaintiff Exhibit 16. However, the website used by Plaintiff clearly*

*notes that it is not an official record and disclaims liability for any inaccuracies.*

*Furthermore, Plaintiff's submission of summaries of the levies issued against Debtors'*

*bank account likewise violates Federal Rule of Evidence 1002, which requires the*

*underlying documentation, rather than summaries thereof.*

**Ruling on §523(a)(2) (except as noted above)**

Although plaintiff mentions §523(a)(4) at the end of his motion, this appears to be

a typographical error and will be disregarded by the Court.  Also to the extent that he

seeks judgment under §523(a)(2)(B), there is no evidence of a false financial statement.

The giving of a check does not qualify under this section.  Thus, this ruling is based on

§523(a)(2)(A), which excepts from discharge any debt "for money, property, services, or

an extension, renewal or refinancing of credit, to the extent obtained by . . . false

pretenses, a false representation, or actual fraud, other than a statement respecting the

debtor's or an insider's financial condition."

Plaintiff argues that the OC Judgment has a preclusive effect estopping Debtors

from denying fraud.  Plaintiff is correct that collateral estoppel applies to §523(a)

proceedings even if they underlying judgment is by default -- provided certain threshold

requirements (discussed below) are met.  *See* <u>Harmon v. Kobrin (In re Harmon</u>), 250

F.3d 1240 (9th Cir. 2001).

Because the OC Judgment was by default, the defaulting defendants are

deemed to have admitted its well-pleaded material allegations.  <u>Johnson v. Stanhiser</u>,

72 Cal.App.4th 357, 361-362 (Cal. Ct. App. 4th Dist. 1999).  The Court must first review

the OC Complaint to see whether it states a cause of action for fraud against either or

both of the Debtors.  It alleges as follows:

¶¶ 26-27 – states that Greta and Oganes passed the two NSF checks to

obtain merchandise they had no intention of paying for.  The $20,000 check was signed by Greta, whereas the $21,444 check was signed by Hovik Mnatsakanyan (identified in Complaint as the brother-in-law and roommate of the Debtors' son Akop, but subsequently described by Plaintiff as an alias of Mr. Indzheyan).  OC Complaint ¶10; Fink Declaration ¶ 2.  (In fact, the $21,444 check appears to be signed by Oganes Indzheyan, or some close variation of that name.  *See* Plaintiff Exhibit 14.)

¶ 30 - describes the assignment of the checks to Fink.

¶ 32 - notes that the $55,971 judgment was entered against Hollywood.

¶¶ 34-36 - alleges that the defendants used or are using Hollywood and Classic as an alter ego.  The only fact to support this contention is that these two entities operate two blocks away from each other.and that their checks and incorporation papers have "identical" typeface and handwriting.

¶ 60 - alleges that the defendants wrote numerous NSF checks, then fraudulently transferred assets from Hollywood to Classic so as to keep customers for their business.

¶ 61 – describes a conversation with Hovik in which he admitted that he had no intention of paying for the merchandise.

¶ 71-72 – identifies the LA Judgment against Hollywood and states that during that litigation the defendants started fraudulently transferring assets from Hollywood to Classic to avoid paying debt.

The prayer incorporates the LA judgment in the amount of $55,971.98 plus accruing interest.  But, as stated in the appellate opinion on the LA Judgment, that "complaint did not state facts constituting the elements of a cause

of action for fraud; accordingly, the defendants' failure to answer the complaint

did not constitute an admission of fraud."[1] (citations omitted).  The Court of

Appeal further ruled that, in order to fill the gap, the plaintiff should have filed an

amended complaint.

Unlike an action on contract, one seeking judgment for fraud must specifically

state the facts that would entitle the plaintiff to prevail:

> In California, fraud must be pled specifically; general and conclusory allegations
> do not suffice. [citations omitted] Thus "the policy of liberal construction of the
> pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any
> material respect." [citation omitted] This particularity requirement necessitates
> pleading facts which "show how, when, where, to whom, and by what means the
> representations were tendered."  [citation omitted]

Lazar v. Superior Court, 12 Cal. 4th 631, 645 (Cal. 1996).  The required elements to

state a cause of action for fraud are a follows:  "(a) misrepresentation (false

representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter");

(c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting

damage." 5 Witkin Sum. Cal. Law Torts 10th Ed. §772.  These are the same elements

required for nondischargeability under §523(a)(2)(A).  Harmon, 230 F.3d  at 1246.

Only after the court decides that the complaint in a default situation contains

specific factual allegations on each of these issues does it look at the evidence

presented at the prove-up hearing to see whether these allegations are substantiated.

Thus, the OC Complaint, standing alone, must state facts constituting the elements of a

cause of action for fraud.   It does not.

It can be inferred from the Complaint that Plaintiff's assignor suffered some

---

[1] The Plaintiff had originally brought an action against both the Debtors and Hollywood in Los Angeles Superior Court alleging fraud and breach of contract on account of the 2003 Checks.  The ensuing LA Judgment (by default) granted judgment for Plaintiff against Hollywood, but also judgment for the Debtors.  Plaintiff appealed the LA Judgment as to the Debtors, but his appeal was dismissed on the grounds that his complaint did not state facts constituting the elements of a cause of action for fraud. See Decision of California Court of Appeal and Judgment of Los Angeles Superior Court, which are Exhibits B and 2 to Defendant's Further Supplemental Brief, dated 9/12/12.

damages because it wasn't paid.  While it is implied that the assignor relied on the

checks when providing merchandise, the complaint does not allege any facts showing

either reliance or justification.  The other three elements are also missing, at least in

part.

Each Debtor signed one of the 2003 Checks, but there are no other facts

pleaded that support the other two required elements of fraud – that they had

knowledge that the check would not be honored by the bank and that they intended to

deceive the assignor when they prepared the checks.  For the 2006 Checks, all three

elements – misrepresentation, knowledge of falsity and intent -- are missing.

But the real basis of the OC Judgment is the assertion that Oganes and Greta

are alter egos of Hollywood.  Although the complaint attempts to allege an alter ego

relationship between the Debtors, Classic, and Hollywood, there are insufficient facts

pleaded.  There must be facts alleged which show that justice cannot otherwise be

accomplished: "the plaintiff must plead and prove such a unity of interest and ownership

that the separate personalities of the corporation and the individuals do not exist, and

that an inequity will result if the corporate entity is treated as the sole actor."  Vasey v.

California Dance Co., 70 Cal. App. 3d 742, 749 (Cal. Ct. App. 2d Dist. 1977).  This is

certainly missing from the OC Complaint in that the only "facts" are that Hollywood and

Classic were, at one time, two blocks apart and have the same typeface and writing on

their checks and corporate documents.


In addition, in order for a default judgment to have collateral estoppel effect,

Plaintiff must provide evidence that (i) Debtors either were personally served with the

complaint or had actual knowledge of the litigation in Orange County Superior Court and

(ii) the default judgment necessarily required a finding of fraud. Cal-Micro, Inc. v.
Cantrell (In re Cantrell), 329 F.3d 1119, 1123-1124 (9th Cir. 2003).

Plaintiff provided a declaration that Mr. Indezheyan had knowledge of the OC
Judgment in late 2009 (Plaintiff Exhibit 7 ¶ 6), which is within the two years provided by
Cal. Code Civ. Pro. §473.5 for defendants to file a motion to set aside a default
judgment and meets this first requirement of actual knowledge. Cantrell, 329 F.3d at
1124. Moreover, Plaintiff has provided evidence that Mr. Indezheyan was personally
served with the complaint on 12/26/07. *See* Declaration of Shawn O'Malley dated
4/14/12 ("O'Malley Declaration"), which is Plaintiff Exhibit 21.

However, Plaintiff has not introduced evidence that Ms. Mnatsakanyan was
either personally served with the complaint or had actual knowledge of the litigation in
Orange County Superior Court. Plaintiff has introduced evidence of "subservice"
(service by delivery to her husband) and service by mail (O'Malley Declaration ¶6) on
Ms. Mnatsakanyan, but neither subservice nor service by mail is personal service.
Plaintiff introduced evidence of notice to Ms. Mnatsakanyan with summaries from Los
Angeles County Sheriff's website showing garnishment of Debtors' bank account and
their daughter's bank account. *See* Plaintiff's Response to Court's 9/25/12 Order,
Exhibits 3, 4. However, even leaving aside the evidentiary inadequacies of summaries
from the Los Angeles County Sheriff's website (as noted above) and the fact that these
summaries do not identify the account holder or account number, notice is simply not
the same as actual knowledge.

Debtors' liability for the 2006 Checks is alleged only in the second claim for fraud,
so the OC judgment against Debtors on the 2006 Checks was necessarily based on
fraud. On the other hand, Debtors' liability for the 2003 Checks is alleged in both the

second claim of fraud and the third claim of fraudulent transfer.  The third claim alleges

fraudulent transfers from Hollywood to Classic in order to avoid paying the earlier LA

Judgment.  These alleged fraudulent transfers occurred well after inventory was

provided on account of these checks, so §523(a)(2)(A) – which covers debts for

property *obtained by* fraud, etc – does not apply. Thus, the OC Judgment does not

necessarily require a finding of the fraud covered by §523(a)(2)(A) for the 2003 Checks.

The OC Complaint does not state facts constituting the elements of a cause of

action for fraud.  Furthermore, Ms. Mnatsakanyan did not receive the personal service

or have the actual notice of the OC Judgment required for a default judgment to have

preclusive effect.  And the OC Judgment was not necessarily based on a finding of

fraud against the Debtors with respect to the 2003 checks.  Accordingly, this Court finds

that the OC Judgment does not have a preclusive effect collaterally estopping Debtors

from denying fraudulent conduct covered by §523(a)(2)(A).

Turning to the evidence presented in this proceeding, there is no question that

both the 2003 Checks and the 2006 Checks were returned NSF and that Debtors each

signed one of the 2003 Checks.

There is a great deal of confusion in the 9th Circuit as to whether the giving of an

NSF check constitutes a representation that the check is covered by good funds.  The

Ninth Circuit BAP has held that tendering a check is an implicit representation that the

check is good.  <u>Bear Stearns v. Kurdoghlian (In re Kurdoghlian),</u> 30 B.R. 500 (BAP 9th

Cir. 1983).  But, as a result of the Supreme Court opinion in <u>Williams v. United States,</u>

458 U.S. 279, 284-85 (1982)[2] and a change in Uniform Commercial Code §3-413(2), a Central District Bankruptcy Court decision in Mandalay Resort Group v. Miller (In re Miller), 310 B.R. 185, 195 (Bankr. C.D. Cal. 2004), determined that Kurdoghlian was no longer to be followed. But the BAP in Levitt v. Cook (In re Levitt), 2008 Bankr. LEXIS 4683 (B.A.P. 9th Cir. 2008) decided to follow its own precedent from Kurdoghlian. However Levitt is an unpublished opinion with no binding effect.

As it applies to this case, the tendering of bad checks is not conclusive evidence of fraud under either ruling. In addition to a misrepresentation, the other elements of knowledge, intent, justifiable reliance and damages must be established. Harmon, 250 F.3d at 1246. Again, damages may be inferred from Plaintiff's assignor's failure to receive payment, but Plaintiff has not shown any evidence of reliance by his assignor. Intent requires that the checks were given with fraudulent intent or with reckless disregard for the truth or reckless indifference to it. See Anastas v. Am. Sav. Bank, 94 F.3d 1280, 1286 (9th Cir. 1996). Defendants have stated under penalty of perjury that the reason each check was returned NSF was due to a sheriff's levy on the bank account prior to negotiation of the checks, but this evidence fails to satisfy FRE 1002 as discussed above. Plaintiff attempts to establish that no levies were conducted on Hollywood accounts at the time the checks were negotiated but, as also noted above, the website used by Plaintiff is not an official record and not reliable, and the summaries also fail to meet the requirements of FRE 1002. Plaintiff Exhibit 16. Without admissible evidence, a triable issue of fact remains on the issue of intent. (The Defendants' intent will be inferred from the circumstances; the parties are urged to obtain admissible

---

[2] Williams held, in the context of interpreting a federal criminal statute, that a check is not a factual assertion and so cannot be true or false. 458 U.S. at 284. Although decided prior to Kurdoghlian, Williams is not referred to in the Kurdoghlian decision.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

evidence on this point for trial.)

The Court will grant partial summary adjudication for the Plaintiff on the issues

that Ms. Mnatsakanyan signed the $20,000 2003 check and that Mr. Indzheyan signed

the $21,444 2003 check and that both of the 2003 Checks, as well as the 2006 Checks,

were returned NSF.  The remainder of Plaintiff's motion for summary judgment on 11

U.S.C. §523(a)(2) will be denied.


**Denial of Discharge:  §727(a)(2**)

**The motion and opposition (Court's comments in italics)**

Plaintiff alleges the following facts, based on bank statements introduced into

evidence as Plaintiff Exhibits 32 and 33:

- In the two months prior to filing for Chapter 7 relief, Debtors withdrew

approximately $75,000 from the bank account of their wholly-owned corporation,

Terrazza Design, Inc. ("Terrazza").  Plaintiff Exhibit 32.

- In the preceding nine months, Debtors had withdrawn only $7,330.00 in cash

cumulatively.  Plaintiff Exhibit 33.

- Debtors had also made 33 money transfers into other bank accounts.  Plaintiff

Exhibit 33.  *The Court has looked at the statements but has not verified the accuracy of*

*Plaintiff's calculation of cash withdrawals and transfers.*

Plaintiff argues that Debtors should be denied a discharge for failure to disclose

these cash withdrawals and transfers, pursuant to Bankruptcy Code §727(a)(2), which

provides:

> The court shall grant the debtor a  discharge, unless . . . the debtor, with intent to hinder,
> delay, or defraud a creditor or an officer of the estate charged with custody of property
> under this title, has transferred, removed, destroyed, mutilated, or concealed, or has
> permitted to be transferred, removed, destroyed, mutilated, or concealed -- (A) property

of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition.

11 U.S.C. §727(a)(2).

Debtors respond that these cash withdrawals were used to purchase various goods and services for the business and to pay rent on the family residence. Indzheyan Declaration ¶16. Debtors also respond that they have submitted invoices and receipts for the payments made with these funds. Id.; Defendant Exhibit C. *Most of these invoices and receipts have post-petition dates, so they cannot account for pre-petition withdrawals and transfers.*

**Ruling on §727(a)(2)**

A party seeking denial of discharge under § 727(a)(2) must prove two things: "(1) a disposition of property, such as transfer or concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act [of] disposing of the property." Hughes v. Lawson (In re Lawson), 122 F.3d 1237, 1240 (9th Cir. 1997). The disposition must be of property of the debtor within the year preceding bankruptcy (or property of the estate after the petition date). 11 U.S.C. §727(a)(2). A debtor's intent need not be fraudulent to meet the requirements of §727(a)(2). Because the language of the statute is in the disjunctive, it is sufficient if the debtor's intent is to hinder or delay a creditor. Bernard v. Sheaffer (In re Bernard), 96 F.3d 1279, 1281 (9th Cir. 1996). Furthermore, "lack of injury to creditors is irrelevant for purposes of denying a discharge in bankruptcy." Id. at 1281-82 (quoting In re Adeeb, 787 F.2d 1339, 1343 (9th Cir. 1986)).

With respect to the disposition requirement, Plaintiff has introduced a bank statement and has highlighted a number of cash withdrawals and transfers to other accounts. However, these transfers are from a bank account belonging, not to the

Debtors, but to Terrazza, which is Debtors' wholly-owned corporation.   Transfers of

property by a subsidiary, thereby reducing the value of Debtor's equity in the subsidiary,

are not transfers of property of the Debtor or of the estate for purposes of §727(a)(2):

> MBank has cited no authority, and we have found none, which holds that the transfer of property of another which has incidental effect upon the assets of a debtor satisfies the requirements of § 727(a)(2)(A). MBank argues that the analysis employed by the bankruptcy and district courts raises form over substance. While facially appealing, that argument simply fails to consider the language employed by Congress in the adoption of § 727(a)(2)(A).
> The words: "Property of the debtor," are not the same as "property in which the debtor has a derivative interest." To the contrary, the language of the statute is sufficiently circumscriptive to eliminate such an interpretation.
> MBank contends the Bankruptcy Code defines "property" to include equitable interests of the debtor, 11 U.S.C. § 541(a)(1). Hence, the creditor maintains the transfer of an asset of a corporation is the transfer of property in which a stockholder has an equitable interest to which § 727(a)(2)(A) would extend. We disagree.
> The purpose of § 541(a)(1) is to define "property of the estate." If MBank's theory is correct, the estate of a debtor who holds a share in a corporation would not only include the value that share would bring, but also a liquidatable interest in any asset owned by that corporation. That is not the scope of § 541(a)(1).
> Congress intended to limit the reach of § 727(a)(2)(A) only to those transfers of property in which the debtor has a direct proprietary interest. MBank's argument to the contrary is creative, indeed ingenious, but it is not persuasive, and the district and bankruptcy courts correctly so concluded.

In re Thurman, 901 F.2d 839, 841 (10th Cir. 1990); *see also* Miller v. Scott (In re Scott),

462 B.R. 735, 741 (Bankr. D. Alaska 2011)("weight of authority holds that a fraudulent

transfer of corporate property does not constitute grounds for denial of discharge in an

individual's case" citing Thurman).  Plaintiff has not introduced evidence to establish that

Debtors and Terrazza should be treated as the same entity, so Plaintiff has not shown a

transfer of estate property or property of the Debtor under §727(a)(2).

Plaintiff's motion for summary judgment on 11 U.S.C. §727(a)(2) will be denied.


**Denial of Discharge:  §727(a)(4)**

**The motion and opposition**

Debtors valued their 100% ownership of Terrazza at $20,000.  Schedule B, item

13.  Plaintiff has introduced expert testimony that (1) inventoried and documented Terrazza's more valuable merchandise on 7/8/11 and (2) valued this property at $260,000 (not including equipment and less valuable inventory).  See Declaration of Kelly O'Kelly dated 7/11/11 ("O'Kelly Declaration") and photographs annexed thereto, which is Plaintiff Exhibit 35.

Plaintiff argues that Debtors should be denied a discharge for providing a false account of the value of the Terrazza stock, pursuant to Bankruptcy Code §727(a)(4)(A), which denies a discharge to a debtor who "knowingly and fraudulently" makes a false oath or account in the course of the bankruptcy case. 11 U.S.C. §727(a)(4)(A).

Debtors respond that the inventory is on consignment and does not belong to Terrazza.  See Indzheyan Declaration ¶¶ 13, 18 and Debtor Exhibit C (Consignment Agreement).  Any remaining stone and the equipment was of de minimis value and well within Debtors' $20,000 valuation of Terrazza.    Indzheyan Declaration ¶¶ 18, 19.

**Ruling on §727(a)(4)**

Debtors' $20,000 valuation of their interest in Terrazzo is susceptible to §727(a)(4) scrutiny as a false statement.  "A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath." Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 172 (B.A.P. 9th Cir. 2007).

Plaintiff's evidence of large quantities of stone inventory valued at $260,000 is countered by the consignment agreement introduced by Debtors and Mr. Indzheyan's testimony that the only valuable inventory is on consignment and does not belong to Terrazza. Thus, a triable issue of fact remains as to the falsity of the statement.  Plaintiff has not introduced any evidence or even argued in his motion that debtors acted

1   "knowingly and fraudulently" in any misstatement of the value of Terrazza.

2       Plaintiff's motion for summary judgment on 11 U.S.C. §727(a)(4) will be denied.

3   ###

24       DATED: December 13, 2012

_____
United States Bankruptcy Judge

**Objections to evidence**

The court rules as follows on the parties objections to evidence:

**Defendants' Objections to Plaintiff's Declaration**

¶2 sustain as to Hovick Indzheyan, Hovic Ingian, and Hovik Mnatsakanyan; overrule as to the balance.

¶3 sustain as to the claim that Classic Tile and Stone is a dba of Hollywood Marble.

¶5 sustain.

¶7 sustain in that there is no admissible evidence that Classic Tile and Stone is a dba of Hollywood Marble.  Also, exhibit 9 shows employment at Hollywood Marble from 2001-2004 and does not mention CT&S.

¶9 sustain only as to the statement that Classic Tile and Stone is a dba of Hollywood Marble.

¶10 sustain.  The judgments are against Hollywood Marble, not CT&S.

¶11 sustain as hearsay and best evidence rule.

¶12 sustain in that checks state that they were from the account of Hollywood Marble, not CT&S.

¶14 sustain in that checks state that they were from the account of Hollywood Marble, not CT&S.

¶17 sustain in the there is no evidence that the levies were attempted on the CT&S bank account.  All of the judgments in ex. 16 are against Hollywood Marble.  Overrule as to the balance of the statement.

¶18 sustain - this is only as to Hollywood Marble.

¶19 overrule.

¶20 overrule.

¶21 overrule

¶22 overrule as to the first sentence.  Sustain as to the balance, which is argument.

¶23 through 28 overrule.

¶29 sustain.

¶30-¶44 overrule

¶49 overrule

¶50 overrule

¶51 overrule

¶52 sustain

¶54 sustain

¶55 through ¶57 - sustain as to the last two sentences of ¶¶56 and 57.  Overrule as to

the balance of these paragraphs.

**Defendants' Objections to Plaintiff's Exhibits**

Overrule all objections.


**Roadmap:  Issues for Trial**

        To assist the parties in their preparation for trial, the Court has compiled a

preliminary list of factual and legal issues that must be determined at trial:

**§523(a)(2)(A)**

Legal issue:  Is tendering a check an implied representation that the check is good?

Factual issue:  Do circumstances show misrepresentation, knowledge of falsity, intent

(either fraudulent intent, reckless disregard or reckless indifference), justifiable reliance

and damages?  (Parties have focused on levies (or lack thereof) on the relevant bank

accounts regarding issue of intent, but only admissible evidence will be considered on

this issue.)

**§727(a)(2)**

Legal and factual issue:  Should Terrazza and Debtors be considered the same legal entity?

Factual issue:  Did Debtors have the intent to "hinder, delay or defraud a creditor" in making the withdrawals?

**§727(a)(4)**

Factual issue:  Was $20,000 valuation of Terrazza in Debtors' schedules false?  (So far, Plaintiff has introduced expert testimony that property at Terrazza's business premises was worth more than $260,000, while Debtor has countered that the most valuable of this property was on consignment.)

Factual issue:  Did Debtors "knowingly and fraudulently" make this false statement?

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*): **Memorandum of Opinion regarding Plaintiff's Motion for Summary Judgment** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner stated below:

**1.    SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** – Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of (*date*)_____, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below:

David Fink Email: DavidFink2@yahoo.com
Steven Gluck Email: SGluck@juno.com
Nancy    Zamora,    Chapter    7    Trustee    Email:    Zamora3@aol.com, Nzamora@ecf.epiqsystems.com

☐  Service information continued on attached page

**2.    SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

David Fink
125 Old Grove Road, Suite # 9-408
Oceanside, CA 92057-1217

Steven Gluck
1313 Post Avenue
Torrance, CA 90501

☐  Service information continued on attached page

**3.    TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☐  Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.